**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trista Tramposch di Genova, | No. CV-25-00597-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| Laura Conover, et al., | |
| Defendants. | |

Pro se Plaintiff Trista Tramposch di Genova has filed a Complaint pursuant to 42 U.S.C. § 1983, § 1985, and state law ("Complaint") (Doc. 1) and an Application to Proceed In District Court Without Prepaying Fees or Costs ("Motion") (Doc. 2). After thorough consideration, the Court will grant the Motion and dismiss the Complaint with prejudice.

**I.    Application to Proceed In District Court Without Prepaying Fees and Costs**

The Motion indicates Plaintiff has insufficient funds to pay the filing fee. Good cause appearing, the Court will grant the Motion.

**II.   Legal Standard**

Under 28 U.S.C. § 1915(e)(2), in a case in which a plaintiff has been granted in forma pauperis status, the Court shall dismiss the case "if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

An in forma pauperis complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under 28 U.S.C. § 1915(e). *See Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). An in forma pauperis complaint repeating the same factual allegations asserted in an earlier case, even if now filed against a new defendant, is subject to dismissal as duplicative and frivolous. *See Bailey*, 846 F.2d at 1021.

To determine whether two successive causes of action are the same, courts use the "transaction test" developed in the context of claim preclusion. *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (noting that "[a] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions"), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). The transaction test examines "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982). "The last of these criteria is the most important." *Id.*

In *Adams*, the district court denied a plaintiff's untimely motion for leave to amend her complaint, and the plaintiff subsequently filed a separate action setting forth the additional claims against the new defendants she had sought to add in her denied motion. 487 F.3d at 687. The Ninth Circuit affirmed the district court's dismissal of the complaint with prejudice, reasoning in part that the same evidence would have been used to support the claims in both complaints, and the complaints differed only in the addition of new parties and legal theories. *Id.* at 689–90. The court found that the central issue in both cases—the legality of the defendants' conduct—had already been addressed, and the plaintiff had already had a "full and fair opportunity to raise and litigate in her first action" the claims she attempted to assert in her second action. *Id.* at 691, 693. The Plaintiff was also seeking substantially the same relief in both cases. *Id.* at 691. Accordingly, the

plaintiff's second action was dismissed as duplicative. *Id.*

## III. Analysis

Plaintiff sues Pima County Attorney Laura Conover, several assistant county attorneys, and Pima County for malicious prosecution, defamation, conspiracy to deprive civil rights, First Amendment retaliation, and a *Monell* violation. *See* Doc. 1. Plaintiff alleges that, after her service dog was unlawfully euthanized, members of the Pima County Sheriff's Department (PCSD) used the veterinarian's statements as the foundation for a search warrant that they executed with " a 60-man armed raid on Plaintiff's home, seizing nearly 200 healthy animals, many of which later died in county custody." Doc. 1 at 2. According to Plaintiff, following this raid, the Pima County Attorney's Office (PCAO) unjustly prosecuted Plaintiff for animal cruelty "despite overwhelming evidence of police fabrication, false timelines, staged photographs, and constitutional violations." *Id.* Plaintiff further alleges that the named assistant county attorneys "supported an involuntary-commitment petition" initiated by PCSD Detectives Teddy Noon and Edgar Nosek and based in part on "Plaintiff's political speech and campaign statements." *Id.*

Plaintiff has brought four other suits against various Defendant's based on these same events. In 2023, Plaintiff brought two suits against several law enforcement officers, including Detectives Noon and Nosek, alleging various constitutional violations. *See Tramposch v. Nosek et al.*, 4:23-CV-00524, Docs. 1, 6, & 8; *Tramposch v. Noon et al.*, 4:23-CV-00525, Docs. 1, 6, & 8. In one case, Plaintiff alleged that PCSD employees improperly obtained a search warrant for her property after her service dog was taken to the veterinarian, and she was unjustly arrested as a result. *See, e.g.*, 4:23-CV-00525, Doc. 8 at 3. In the other, Plaintiff focused on how PCSD officers had her involuntarily committed in retaliation for filing complaints about the officers' conduct while executing the search warrant, justifying her commitment because Plaintiff had "delusions of being a good presidential candidate."[1] *See e.g.*,  4:23-CV-00524, Doc. 1 at 4, Doc. 6 at 5.   In Plaintiff's

---

[1] Plaintiff's second amended complaints in both cases were broader, and she provided the Court will a 20-page "summary" of the events underlying each action. *See generally* 4:23-CV-00524 at Doc. 8-1; 4:23-CV-00525 at Doc. 8-1. These versions of her complaints described the veterinarian visit, the allegedly improper search warrant, the "raid" of her

first case, the Court attempted to give her four chances to state a claim but directed the Clerk of Court to close the case after Plaintiff failed to file a third amended complaint as directed. *See* 4:23-CV-00524, Docs. 9, 10. In Plaintiff's second case, the Court gave her three chances to state a claim and dismissed her second amended complaint with prejudice when she failed to meet the pleading standard. *See* 4:23-CV-00525, Doc. 9.

Earlier this year, Plaintiff filed two more cases against several of the same defendants from her 2023 cases, along with additional defendants. *See Tramposch v. Pima Animal Care Center, et al.*, 4:25-CV-00572; *Tramposch v. Noon et al.*, 4:25-CV-00573. As before, Plaintiff alleged law enforcement officers had "conspired to fabricate and execute a false investigation and unlawful seizure of Plaintiff's animals," used excessive force in executing the warrant, and conspired to have her involuntarily committed in retaliation for her complaints of misconduct. *See* 4:25-CV-00572, Doc. 1; 4:25-CV-00573, Doc. 1. On November 18, 2025, the Court screened Plaintiff's complaint in 4:25-CV-00572 and found it shared a common nucleus of fact with and would have involved the same evidence as 4:23-CV-00525 had the case survived screening. *See* 4:25-CV-00572, Doc. 5 at 3. Accordingly, the Court dismissed 4:25-CV-00572 as duplicative.[2] *See id.*

The Court will also dismiss this Complaint as duplicative of 4:23-CV-00524, 4:23-CV-00525, 4:25-CV-00572, and 4:25-CV-00573. Like in *Adams*, Plaintiff's cases all arise from a common nucleus of fact, and the acts Plaintiff complains of here are identical to those alleged in her previous cases. *See, e.g.*, 4:23-CV-00524, Doc. 8-1 at 8–12; 4:23-CV-00525, Doc. 8-1 at 2–3, 9; 4:25-CV-00572, Doc. 1 at 2–3 (discussing the "60-man armed raid" and alleging Plaintiff's criminal charges were based on false evidence and police misconduct; 4:23-CV-00524, Doc. 8-1 at 6, 15–16, 19; 4:23-CV-00525, Doc. 8-1 at 14–15 (discussing Plaintiff's involuntary-commitment petition and alleging it was retaliatory and motivated by her political campaign).[3] Plaintiff has previously tried to bring malicious

---

home and seizure of her animals, and her resulting arrest and involuntary commitment. *See id.*
[2] The Court has not yet screened the complaint in 4:25-CV-00573, but its factual allegations are nearly identical to the complaint in 4:25-CV-00572, and it will likely be similarly fated.
[3] Plaintiff has also previously accused the PCAO of misconduct, though this is the first time she has sued PCAO employees. *See* 4:23-CV-00524, Doc. 8-1 at 15, 16; 4:23-CV-

prosecution, defamation, "conspiracy to violate constitutional rights," supervisory liability, and First Amendment retaliation claims against various defendants in her prior actions. *See* 4:23-CV-00524, Doc. 1 at 3, Doc. 6 at 5, Doc. 8 at 3; 4:23-CV-00525, Doc. 1 at 1, Doc. 6 at 7, 9, Doc. 8-1 at 1; 4:25-CV-00572, Doc. 1 at 3; 4:25-CV-00573, Doc. 1 at 3. Here, Plaintiff seeks compensatory and punitive damages, a declaration that "Defendants' actions violated Plaintiff's constitutional rights," "disciplinary referral of Defendants to the Arizona State Bar and Department of Justice Civil Rights Division," and "injunctive relief prohibiting further retaliatory actions and ensuring return of Plaintiff's remaining animals." Doc. 1 at 3. Plaintiff has previously requested compensatory and punitive damages and repeatedly asked the Court to order the return of her animals. *See* 4:23-CV-00524, Doc. 8-1 at 20; 4:23-CV-00525, Doc. 8-1 at 4; 4:25-CV-00572, Doc. 1 at 4; 4:25-CV-00573, Doc. 1 at 4.

Plaintiff's many complaints make clear she is upset that her animals were confiscated, feels the resulting criminal charges and proceedings against her were unjust, and wants someone held accountable. The Court has given Plaintiff the opportunity to bring her case, and she has failed six times to state a claim arising from the facts alleged here. Plaintiff has already had a "full and fair opportunity to raise and litigate" her claims, and she cannot circumvent the judicial process by filing the same case against different defendants. Accordingly, this Complaint is duplicative.[4]

///

///

---

00525, Doc. 8-1 at 2–3, 9.

[4] The Court would dismiss the Complaint even if it were not duplicative. Here, Plaintiff attempts to sue county attorneys for charging decisions and conduct during the judicial process. *See* Doc. 1 at 2–3. These claims fail because prosecutors have absolute immunity from civil suit under 42 U.S.C. § 1983 for acts "within the scope of [their] duties in initiating and pursuing a criminal prosecution." *See Imbler v. Pachtman*, 424 U.S. 409, 409 (1976); *see also Burns v. Reed*, 500 U.S. 478, 489–90 (1991) ("Prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding) . . . ."). Plaintiff's *Monell* claim against Pima County also fails because she has not alleged a pattern or practice of similar constitutional violations. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.").

- 5 -

**IV.  Warning**

The right to access the courts is a cornerstone of the legal system, and individuals must be allowed a fair opportunity to present legitimate claims, regardless of how often they litigate. *In re Oliver*, 682 F.2d 443, 446 (3d Cir. 1982). Additionally, the in forma pauperis statute was designed to ensure indigent individuals have equal access to the federal courts. *Id.* (citing 28 U.S.C. § 1915). However, this access is not without limits: regardless of financial status, no one has the right to misuse or exploit the judicial system. *Id.*

A district court is empowered to enjoin litigants who have abusive histories of litigation or who file frivolous lawsuits from continuing to do so. *See* 28 U.S.C. § 1651(a). "A District Court not only may, but should, protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Safir v. United States Lines, Inc.*, 729 F.2d 19, 24 (2nd Cir. 1986). Federal courts possess the inherent power "to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances," such as enjoining litigants from filing new actions under 28 U.S.C. § 1651(a). *Delong v. Hennesey*, 912 F.2d 1144, 1147 (9th Cir. 1990). Such restrictions are appropriate to further important judicial interests such as preserving the finality of judgments, protecting defendants from unwarranted harassment, or maintaining order on the Court's docket. *See Oliver*, 682 F.2d at 445 (3d Cir. 1982), (citing *Clinton v. United States*, 297 F.2d 899, 901 (9th Cir. 1961)). Before imposing such an order, the Court must (1) give the litigant notice and an opportunity to be heard; (2) compile an adequate record; (3) make substantive findings of frivolousness or harassment; and (4) narrowly tailor the order to the specific conduct at issue. *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014).

Plaintiff has filed five cases with this Court this year and seven cases total.[5] Four of

---

[5] *Tramposch di Genova v. Nosek et al.*, 4:23-CV-00524 (Dec. 13, 2024) (closing case after Plaintiff failed to file a third amended complaint); *Tramposch v. Noon et al.*, 4:23-CV-00525 (Nov. 22, 2024) (dismissing second amended complaint with prejudice); *Tramposch v. Pima Animal Care Center et al.*, 4:25-CV-00572 (Nov. 18, 2025) (dismissing case as duplicative); *Tramposch v. Noon et al.*, 4:25-CV-00573 (screening order forthcoming); *Tramposch di Genova v. Conover et al.*, 4:25-CV-00597 (instant case); *Tramposch di*

Plaintiff's 2025 cases have related to the same events underlying her two 2023 cases. Both of Plaintiff's 2023 cases failed to make it past screening, and two, now, of Plaintiff's 2025 cases have been dismissed as duplicative.[6] Plaintiff's two remaining complaints pending before the Court also appear meritless.

Plaintiff's numerous complaints, particularly those involving claims she has already had the opportunity to litigate, have been frivolous and a drain on judicial resources. The Court strongly cautions Plaintiff to familiarize herself with the Federal Rules of Civil Procedure and consider the merits of her case and whether she can successfully state a claim before filing any additional cases. **If Plaintiff continues to file frivolous, duplicative lawsuits, the Court may place restrictions on Plaintiff's ability to file in the District of Arizona.**

V.  Order

Accordingly,

**IT IS ORDERED granting** Plaintiff's Application to Proceed In District Court Without Prepaying Fees or Costs (Doc. 2).

**IT IS FURTHER ORDERED dismissing with prejudice** the Complaint as duplicative of *Tramposch di Genova v. Nosek et al.*, 4:23-CV-00524; *Tramposch v. Noon et al.*, 4:23-CV-00525; *Tramposch v. Pima Animal Care Center et al.*, 4:25-CV-00572; and *Tramposch v. Noon et al.*, 4:25-CV-00573. The Clerk of Court is directed to enter judgment accordingly.

Dated this 20th day of November, 2025.

_____
John C. Hinderaker
United States District Judge

---

*Genova v. Russo et al.*, 25-CV-598 (screening order forthcoming); *Tramposch di Genova v. Trump et al.*, 4:25-CV-00599 (Nov. 5, 2025) (dismissing complaint for failure to state a claim and granting leave to amend).

[6] The Court dismissed Plaintiff's unrelated complaint in 4:25-CV-00599 for failure to state a claim. *See* 4:25-CV-00599, Doc. 5.